[Cite as *United Bhd. of Carpenters & Joiners of Am., Local Union No. 1581 v. Fitzenrider*, 2012-Ohio-4653.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS
OF AMERICA, LOCAL UNION
NO. 1581,                                                    CASE NO.  7-11-20

      PLAINTIFF-APPELLANT/
      CROSS-APPELLEE,

      v.

                               **O P I N I O N**

FITZENRIDER, INC.,

      DEFENDANT-APPELLEE/
      CROSS-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 03 CV 137

Judgment Affirmed

Date of Decision:   October 9, 2012

**APPEARANCES:**

    *Joseph M. D'Angelo*  for Appellant/Cross-Appellee

    *Alan G. Ross and Nick A. Nykulak*  for Appellee/Cross-Appellant

**SHAW, P.J.**

{¶1} Plaintiff-appellant-cross-appellee United Brotherhood of Carpenters & Joiners of America, Local Union 1581 ("Local 1581") appeals the October 13, 2011, judgment of the Henry County Common Pleas Court granting summary judgment in favor of defendant-appellee-cross-appellant Fitzenrider, Inc. ("Fitzenrider"). Fitzenrider also appeals the October 13, 2011, judgment of the Henry County Common Pleas Court denying Fitzenrider's request for attorneys' fees.

{¶2} The facts relevant to this appeal are as follows. Fitzenrider is a "mechanical contractor" that performs heating, ventilation, air conditioning and plumbing.[1] Fitzenrider was one of multiple contractors that bid on a construction contract for a public project known as the Liberty Township – Washington Township Fire Station Project ("the project"). The project exceeded the statutory threshold to require compliance with the prevailing wage law (R.C. 4115.03 *et. seq.*). Ultimately Fitzenrider's bid was selected and Fitzenrider was awarded a contract to work on the project.

{¶3} On July 30, 2003, Local 1581 filed a complaint to audit Fitzenrider's compliance with Ohio prevailing wage law pursuant to R.C. 4115.16(B). (Doc. 1).

---

[1] This is how Fitzenrider described itself in its motion for summary judgment. (Doc. 45).

Local 1581 represented members who worked for unsuccessful bidders on the project giving Local 1581 standing as an interested party pursuant to the statute.

**{¶4}** The complaint alleged that Fitzenrider failed to pay the prevailing wage, that Fitzenrider failed to properly prepare proper certified payroll reports, that Fitzenrider failed to comply with the applicable journeyman to apprentice ratio for the project, and that Fitzenrider's violations were all intentional. (Doc. 1).

**{¶5}** On August 27, 2003, Fitzenrider filed its answer, containing affirmative defenses. (Doc. 10).

**{¶6}** On November 29, 2004, Fitzenrider filed a motion to dismiss arguing, *inter alia*, that Local 1581 was not an interested party. (Doc. 27). On January 7, 2005, Local 1581 filed a memorandum in opposition to the motion to dismiss. (Doc. 33). On January 18, 2005, Fitzenrider filed a reply brief. (Doc. 34).

**{¶7}** On February 16, 2005, the court filed a judgment entry denying Fitzenrider's motion to dismiss.

**{¶8}** On March 29, 2005, Local 1581 filed a motion for summary judgment. (Doc. 44). In its motion, Local 1581 alleged that Fitzenrider had committed a variety of violations, many of which were not included in the complaint. Local 1581 alleged that Fitzenrider violated R.C. 4115.05 by failing to inform its employees of the identity of the prevailing wage coordinator, that

Fitzenrider violated O.A.C. 4101:9-4-13(A)(3) by failing to post its own notice of the schedule of wage rates applicable to the project at the jobsite of the project; that Fitzenrider violated R.C. 4115.05, 4115.06, and O.A.C. 4101:9-4-21 by failing to maintain accurate records regarding its prevailing wage compliance; that Fitzenrider violated R.C. 4115.10 by not paying prevailing wages for offsite fabrication or "shop work" performed in relation to the project; that Fitzenrider violated R.C. 4115.10 by failing to pay its employees the applicable "base rate" as listed in the applicable prevailing wage schedule of wage rates; that Fitzenrider failed to establish that any of its fringe benefit funds, plans and programs were legitimate, and failed to substantiate any payments made to its fringe benefit programs; that Fitzenrider unlawfully calculated its fringe benefit credits, and that Fitzenrider failed to properly prepare its certified payroll reports in compliance with R.C. 4115.071(C). Local 1581 also requested attorney's fees and costs expended in prosecuting the matter pursuant to R.C. 4115.16(D).

{¶9} On March 30, 2005, Fitzenrider filed a motion for summary judgment asserting its compliance with Ohio's Prevailing Wage Law. (Doc. 45). Fitzenrider also requested attorney's fees and costs expended in defending this matter pursuant to R.C. 4115.16(D).

{¶10} On April 27, 2005, Local 1581 filed a brief in opposition to Fitzenrider's motion for summary judgment. (Doc. 52). On May 4, 2005,

Fitzenrider filed a brief in opposition to Local 1581's motion for summary judgment. (Doc. 53). In its brief in opposition, Fitzenrider adamantly opposed Local 1581's ability to raise several of the violations alleged by Local 1581 in Local 1581's motion for summary judgment as Fitzenrider claimed these issues were not alleged in the complaint. (*Id.*)

{¶11} On May 6, 2005, Fitzenrider filed a reply brief in support of Fitzenrider's motion for summary judgment. (Doc. 54). On May 24, 2005, Local 1581 filed a reply brief in support of its motion for summary judgment. (Doc. 58).

{¶12} On August 26, 2011, the court filed its opinion granting Fitzenrider's motion for summary judgment, finding that Fitzenrider had not violated Ohio's prevailing wage law. (Doc. 75). In making this finding, the court held that several of the issues raised by Local 1581 in its motion for summary judgment were not alleged in the complaint and that Fitzenrider had not consented to litigate them. (*Id.*) The court found that despite the fact this litigation had been ongoing for eight years, Local 1581 made no attempt to amend the complaint to include the new allegations.[2] (*Id.*) Therefore the court awarded summary judgment to Fitzenrider. However, the court declined to award Fitzenrider attorney's fees, finding that there was no lack of possible foundation to Local 1581's claims.

---

[2] We note it appears from the record that more than one trial judge was involved in the course of this litigation.

-5-

{¶13} On October 13, 2011 the court filed a judgment entry reflecting its determinations from the August 26, 2011 opinion. (Doc. 81). It is from this judgment that Local 1581 appeals asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED FITZENRIDER'S MOTION FOR SUMMARY JUDGMENT AND DISMISSED THIS ACTION.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO APPLY A NOTICE PLEADING STANDARD TO PLAINTIFF'S COMPLAINT.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT FITZENRIDER'S UNDERPAYMENT WAS NOT A VIOLATION OF R.C. 4115.10(A).**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD THAT FITZENRIDER'S INCOMPLETE CERTIFIED PAYROLL REPORTS DID NOT VIOLATE R.C. 4115.071(C).**

{¶14} Fitzenrider also appeals the October 13, 2011 judgment of the Henry County Common Pleas Court asserting the following assignment of error for our review.

**FITZENRIDER'S ASSIGNMENT OF ERROR**
**THE TRIAL COURT COMMITTED REVERSIBLE ERR[OR] AND ABUSED ITS DISCRETION BY DENYING FITZENRIDER'S REQUEST FOR ATTORNEYS' FEES AND COSTS PURSUANT TO R.C. 4115.16(D).**

{¶15} In the interest of clarity, we elect to address some of the assignments of error out of the order in which they were raised.

*Standard of Review*

{¶16} Initially, we note that an appellate court reviews a grant of summary judgment *de novo*, without any deference to the trial court. *Sheely v. Sheely*, 3d. Dist. No. 2-10-38, 2012-Ohio-43, ¶ 17, citing *Conley-Slowinski v. Superior Spinning & Stamping Co.*, 128 Ohio App.3d 360, 363 (6th Dist.1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56; *Horton v. Harwick Chem. Corp.,* 73 Ohio St.3d 679, 1995-Ohio-286, at paragraph three of the syllabus.

{¶17} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988) at syllabus. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case.

*Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107. Once the moving party demonstrates that it is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E).

{¶18} In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Jacobs v. Racevskis*, 105 Ohio App.3d 1, 7 (2nd Dist.1995). Additionally, Civ.R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Local 1581's Second Assignment of Error*

{¶19} In Local 1581's second assignment of error, Local 1581 argues that the trial court erred by "fail[ing] to apply a notice pleading standard" to Local 1581's complaint. Specifically Local 1581 argues that the combination of two statements made in Local 1581's complaint should have been found sufficient to put Fitzenrider on notice of various issues and therefore the trial court should not have found that Local 1581 failed to allege these claims in its complaint.

{¶20} Civil Rule 8(A), regarding what is required in a complaint to state a claim, reads as follows:

**(A)  Claims for relief**

**A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled. If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought, unless the claim is based upon an instrument required to be attached pursuant to Civ. R. 10. At any time after the pleading is filed and served, any party from whom monetary recovery is sought may request in writing that the party seeking recovery provide the requesting party a written statement of the amount of recovery sought. Upon motion, the court shall require the party to respond to the request. Relief in the alternative or of several different types may be demanded.**

{¶21} Under the Rule cited above, a complaint requires "a short and plain statement of a claim showing that the party is entitled to relief."  Civ.R. 8(A).  A complaint need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided.  *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist.1982).  "Notice pleading" under Civ.R. 8(A) requires that a claim concisely set forth only those operative facts sufficient to give "fair notice of the nature of the action."  *DeVore v. Mutual of Omaha Ins. Co.*, 32 Ohio App.2d 36, 38 (7th Dist.1972).

{¶22} Local 1581 argues that the court did not apply this "notice pleading" standard to its complaint. Relevant provisions of Local 1581's complaint read as follows:

**14. Pursuant to Ohio's Prevailing Wage Law, R.C. 4115.03 through R.C. 4115.16 and the applicable regulations, Defendant Fitzenrider was obligated to pay its employees the prevailing rate of wages for any work it suffered, permitted, or required any employee to perform on the project, and it was obligated to comply with the remainder of Ohio's Prevailing Wage Law.**

**15. Plaintiff is informed and believes, and on the basis of such information and belief alleges that Defendant Fitzenrider failed to strictly comply with the wage provisions of the contract executed between it and the public authority to pay a rate of wages not less than the rate of wages so fixed, as required by R.C. 4115.06.**

**16. Defendant Fitzenrider failed to prepare certified payroll reports enumerating each employee's fringe benefit payments, as required by R.C. 4115.071(C).**

**17. Defendant Fitzenrider failed to prepare certified payroll reports exhibiting each employee's job classification.**

**18. Defendant Fitzenrider compensated its employees at a rate less than the fixed prevailing rate of wages applicable to employees working in Henry County, Ohio for their work on the Project in violation of R.C. 4115.10.**

**19. Defendant Fitzenrider failed to supply certified payroll reports exhibiting for each employee the employee's job classification.**

**20. Defendant Fitzenrider's prevailing wage violations with regard to the Project were intentional in that Defendant Fitzenrider knowingly submitted false inaccurate and/or incomplete or erroneous certified payroll reports.**

\* \* \*

**25. To date, Defendant has not paid the prevailing rate of wages for the work performed on the Project, nor has the Defendant remedied its other violations of Ohio's Prevailing Wage Law.**

(Doc. 1).

{¶23} On appeal Local 1581 claims that provisions 14 and 25, when read together, were sufficient to put Fitzenrider on notice that claims other than those specifically enumerated in provisions 15-20 of the complaint would be litigated.

{¶24} On this issue, the trial court conducted the following analysis in its opinion:

> **A review of the complaint filed in 2003 makes no direct mention of the following violations alleged in Plaintiff's Motion for Summary Judgment filed March 29, 2005: (1) a violation of 4115.05 of the Ohio Revised Code of failing to provide written notification of the identity of the prevailing wage coordinator; (2) a violation of O.A.C. 4101:9-4-13(A)(3) failing to post a schedule of the prevailing wage rates in a prominent and accessible place at the project job site; (3) a violation of O.A.C. 4101:9-4-14(A) of failing to notify the public authority of a subcontract; (4) a violation of 4115.05 Ohio Revised Code of failing to maintain payroll records. None of these violations were directly raised in the complaint except that paragraph 25 of Plaintiff's Complaint asserts that "… Defendant has not paid the prevailing wage rate for the work performed on the project, nor has the defendant remedied its other violations of Ohio's Prevailing Wage Law." Defendant could have reasonably assumed the reference to "other violations" were the allegations contained in paragraphs 16 and 17 regarding the certified payroll reports.**

(Doc. 75). The court went on to conclude that the complaint was filed over eight years prior to the court's decision, that substantial discovery had been conducted giving Local 1581 ample time to amend its complaint, but still Local 1581 failed to amend the complaint. (*Id.*) The court also found that Fitzenrider had not consented to litigate the issues and that Fitzenrider expressly requested that the issues not be considered. (*Id.*) Therefore, the court found that the issues were not raised in the complaint and would not be considered. (*Id.*)

{¶25} Upon our own analysis of provisions 14 and 25 of the complaint, we agree with the trial court's conclusion. Even when analyzing provisions 14 and 25 of the complaint together, the provisions appear to be statements rather than allegations. Provisions 15-20 of the complaint contain specific allegations that put Fitzenrider on notice of prevailing wage claims that it must defend against. Provisions 14 and 25 do not put Fitzenrider on notice of any other violations of prevailing wage law aside from the ones cited in provisions 15-20 of the complaint.

{¶26} Moreover, despite ample opportunity, Local 1581 did not, at any time during this *8 year* litigation, move to amend the complaint. Local 1581 argued in its brief that the "vast majority" of violations in a prevailing wage compliance case are undetectable until a case has progressed through discovery and deposition and therefore it is basically impossible to plead with particularity

all violations. Without discounting this assertion, it was certainly possible upon discovery of the purported violations for Local 1581 to make use of the liberal amendment rules for pleadings under Civ.R. 15.

**{¶27}** Although only a short and plain statement showing entitlement to relief is required to satisfy the "notice pleading" standard in Ohio, Ohio courts have held that an award of summary judgment cannot be granted on claims not alleged in the complaint. *See L.P Cavett Co. v. Bd. Of Twp. Trs.*, 12th Dist. No. CA2000-08-010, (July 30, 2001). It is possible that Fitzenrider could have impliedly consented to the new issues raised by Local 1581 in its motion for summary judgment. *See McGinnis, Inc. v. Lawrence Economic Development Corporation, et al.*, 4th Dist. No. 02CA33, 2003-Ohio-6552 ¶¶ 25-26. However, the first time Local 1581 raised these issues in its motion for summary judgment, Fitzenrider adamantly objected to Local 1581's ability to argue the additional claims in its brief in opposition. Thus Fitzenrider did not expressly or impliedly consent to litigating the claims. *Id.*

**{¶28}** In sum, we find that the provisions cited by Local 1581 were not sufficient to put Fitzenrider on notice of the specific claims it sought summary judgment on its motion. In addition, Local 1581 had ample time to amend its complaint, an avenue which it chose not to pursue. Furthermore, Fitzenrider never

consented to litigate the other issues raised in Local 1581's motion for summary judgment. Accordingly, Local 1581's second assignment of error is overruled.

*Local 1581's Fourth Assignment of Error*

{¶29} In Local 1581's fourth assignment of error, Local 1581 alleges that the trial court erred when it concluded that Fitzenrider's certified payroll reports did not violate R.C. 4115.071(C). Specifically Local 1581 argues that Fitzenrider was required under the Ohio Revised Code to put each employee's job classification and the total hours worked by employees on all jobs during the pay period.

{¶30} R.C. 4115.071(C) sets forth the items that must be enumerated on an employer's certified payroll reports. In pertinent part, R.C. 4115.07(C) reads,

> **\* \* \* The contractor or subcontractor shall also deliver to the prevailing wage coordinator a certified copy of the contractor's or subcontractor's payroll, within two weeks after the initial pay date, and supplemental reports for each month thereafter which shall exhibit for each employee paid any wages, the employee's name, current address, social security number, number of hours worked during each day of the pay periods covered and the total for each week, the employee's hourly rate of pay, the employee's job classification, fringe payments, and deductions from the employee's wages. If the life of the contract is expected to be no more than four months from the beginning of performance by the contractor or subcontractor, such supplemental reports shall be filed each week after the initial report. The certification of each payroll shall be executed by the contractor, subcontractor, or duly appointed agent thereof and shall recite that the payroll is correct and complete and that the wage rates shown are not less than those required by the contract.**

{¶31} It is undisputed in this case that Fitzenrider did not include each employee's job classification and the total hours worked by employees on all jobs during the pay period. In addition, it is undisputed that Fitzenrider maintained certified payroll reports which were provided to the Ohio Department of Commerce with a signed affidavit of John Jacob, Fitzenrider's President, attesting that wages were paid in accordance with the prevailing wage as prescribed by the contract. (Doc. 45, Ex. D). Furthermore, the information omitted on the face of the certified payroll reports was otherwise submitted to the Ohio Department of Commerce.

{¶32} In *Vaughn Industries, Inc. v. Dimech Services*, 167 Ohio App.3d 634 (6th Dist.2006) (hereinafter "*Vaughn* 1") and *IBEW Local 8 v. Vaughn Industries, Inc.*, 6th Dist. No. WD-07-026, 2008-Ohio-2992 (hereinafter "*Vaughn* 2"), the Sixth District Court of appeals addressed the issue of whether failing to include one of the enumerated items in R.C. 4115.071(C) in a payroll report was a violation of the statute's requirements. Ultimately, in the *Vaughn* cases, the Sixth District found that the contractor's inclusion of a signed "statement of compliance" attesting that the contractor "had paid or would be paying the fringe benefits required under the contract" with the payroll reports was sufficient to satisfy the revised code when a contractor neglected to include one of the enumerated items of R.C. 4115.071(C). *Vaughn* 1, at ¶ 28.

{¶33} In this case, Fitzenrider submitted an affidavit by its president with its payroll reports containing the following language:

> **I, John F. Jacob President of the Fitzenrider, Inc., do hereby certify that the wages paid to all employees for the full number of hours worked in connection with the Contract to the Improvement, Repair and Construction of: Liberty-Washington Twp. New Fire Station, Liberty Center, OH during the following period from May 22, 2002 to January 24, 2003 is in accordance with the prevailing wage prescribed by the contract document.**
>
> **I further certify that no rebates of deductions for any wages due any person have been directly or indirectly made other than those provided by law.**

(Doc. 45 Ex. D). The affidavit submitted by Fitzenrider along with the payroll reports contains similar language to the "statements of compliance" that were cited in both *Vaughn* cases. Although the item not listed on the payroll reports in *Vaughn* 1 was fringe benefit payments, we find the *Vaughn* analysis persuasive and applicable here.

{¶34} However, even if Fitzenrider did fail to meet the requirements of R.C. 4115.071(C) on the face of its certified payroll reports, the information that was omitted on the reports was otherwise submitted to the Ohio Department of Commerce. *See* (Exs. C, E, O). Thus there was no failure on the part of Fitzenrider to make sure the Department of Commerce had this information.

{¶35} For the foregoing reasons we find that summary judgment was properly granted to Fitzenrider on this issue and Local 1581's fourth assignment of error is overruled.

*Local 1581's Third Assignment of Error*

{¶36} In Local 1581's third assignment of error, Local 1581 argues that the trial court erred by allowing Fitzenrider to "deviate" from the formula for calculating fringe benefit credits in Ohio Administrative Code 4101:9-4-06(E) and that such a deviation resulted in an underpayment that the trial court should have found violated R.C. 4115.10(A). Specifically, Local 1581 argues that according to the Ohio Administrative Code, Fitzenrider was required to use the denominator of 2080 as the default 'hours worked' in the absence of the *actual* number of hours worked.

{¶37} Ohio Administrative Code 4101:9-4-06, which relates to calculating fringe benefit credits, reads as follows:

> **(A)  It is the duty of each employer to calculate the amount of credit it seeks for fringe benefits in accordance with Chapter 4101:9-4 of the Administrative Code.**
>
> **(B)  Each employer shall submit a certified payroll report to the prevailing wage coordinator. This report shall include at a minimum the basic hourly rate, calculated hourly rate of fringe benefits credited, all permissible payroll deductions.**
>
> **(C)  The employer shall submit detailed calculations showing the calculations used in determining any of the information**

**contained on the certified payroll report upon request by commerce.**

**(D) Where the employer provides commerce with substantiating documentation concerning the amount contributed to the fringe benefit and the total number of hours worked by the employee on all projects deemed relevant by the director for the purposes of this calculation, hourly fringe benefit credit shall be calculated by dividing the total contribution of the employer applicable to the employee by the total number of hours worked by the employee.**

**(E) Where the employer provides commerce with substantiating documentation concerning only the amount contributed to the fringe benefit, hourly fringe benefit credit shall be calculated by dividing the total yearly contribution by 2080.**

**(F) Commerce may reject any credits sought by an employer which are not substantiated by adequate records.**

**(G) Falsification of any information provided to commerce pursuant to this rule is a violation of section 2921.13 of the Revised Code.**

{¶38} Revised code 4115.03(E) defines prevailing wages as the sum of the following:

**(1) The basic hourly rate of pay;**

**(2) The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program;**

**(3) The rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing the following fringe benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or**

**program which was communicated in writing to the laborers and mechanics affected:**

**(a) Medical or hospital care or insurance to provide such;**

**(b) Pensions on retirement or death or insurance to provide such;**

**(c) Compensation for injuries or illnesses resulting from occupational activities if it is in addition to that coverage required by Chapters 4121. and 4123. of the Revised Code;**

**(d) Supplemental unemployment benefits that are in addition to those required by Chapter 4141. of the Revised Code;**

**(e) Life insurance;**

**(f) Disability and sickness insurance;**

**(g) Accident insurance;**

**(h) Vacation and holiday pay;**

**(i) Defraying of costs for apprenticeship or other similar training programs which are beneficial only to the laborers and mechanics affected;**

**(j) Other bona fide fringe benefits.**

**None of the benefits enumerated in division (E)(3) of this section may be considered in the determination of prevailing wages if federal, state, or local law requires contractors or subcontractors to provide any of such benefits.**

{¶39} In this case, it is undisputed that in calculating fringe benefit credit, Fitzenrider used the divisors of 1908 and 1948. Fitzenrider came to these figures by beginning with the idea that employees would work 52 weeks per year at 40

hours per week for a total of 2080 hours. Then, Fitzenrider subtracted from the 2080 hours the number of hours that employees would be on paid holiday or on paid vacation. Fitzenrider's employees received 52 hours of paid holidays each year, and either 80 or 120 hours of paid vacation depending upon the employees' hire date and years of service. Adding the hours the employees would not be working while on holiday to hours the employees would be on paid vacation there were either 132 hours or 172 hours per year that a given employee would not be working. Fitzenrider took these numbers and subtracted them from the base number of hours, 2080, to get the divisors of 1948 and 1908—Fitzenrider's estimated amount of hours worked for each employee for the given year. Fitzenrider then used these two numbers as the divisors for calculating its fringe benefits credit.

{¶40} Local 1581 argues that pursuant to the Ohio Administrative Code, Fitzenrider either had to use the number of hours actually worked by the employees (O.A.C. 4101:9-4-06(D)) *or* what Local 1581 claims is the default divisor of 2080 hours for the "annual" method (O.A.C. 4101:9-4-06(E)). Local 1581 claims that Ohio Administrative Code provision 4101:9-4-06 cited above does not allow for Fitzenrider's estimation of total hours worked for the employees.

{¶41} An argument similar to Local 1581's claim was made in *Vaughn* 2, *supra*. In *Vaughn* 2, the Sixth District Court of Appeals conducted the following analysis:

> * * * **IBEW claims that this court must adopt one of its methods of calculation per Ohio Adm.Code 4101:9-4-06(D) or Ohio Adm.Code 4101:9-4-06(E). We disagree.**
>
> **To repeat, in IBEW I, this court determined that to be in "compliance with Ohio's Prevailing Wage Law, and unless otherwise modified by the administrator, fringe benefits credit must be calculated on the hour-for hour-basis by dividing the total contribution to fringe benefits on public projects by the total number of hours worked by the employee on public projects." A thorough review of the trial testimony given by Vaughn's President Matthew Plotts, and Chief Financial Officer, Jennifer Smalley, as well as the voluminous records related to the calculation of the fringe benefits credit that were entered into evidence at trial, reveals some competent credible evidence that this credit was calculated properly.**

*Vaughn* 2, 2008-Ohio-2992 ¶¶ 44-45. The Sixth District's analysis illustrates that contrary to Local 1581's position, there are more than two permissible methods of calculating fringe benefit credits pursuant to the Ohio Administrative Code.

{¶42} Moreover, in R.C. 4115.03(E)(3), *supra*, the legislature inserted language that the rate of costs "may be reasonably anticipated." Reading the corresponding O.A.C. provision, 4101:9-4-06, with the idea that costs may be "reasonably anticipated" and factoring in the Sixth District's interpretation in *Vaughn* 2 that there are more than the two methods for calculating fringe benefit

credits, we find that Fitzenrider was not required to use the "default" divisor of 2080 if Fitzenrider could "reasonably anticipate" its costs.

{¶43} The record demonstrates just such a reasonable anticipation. Here we have a detailed accounting for how Fitzenrider calculated its fringe benefit credits and came up with the divisors of 1908 and 1948. These calculations were based on actual hours the employees would work in the year after their vacation and holiday hours were subtracted from the base amount of 2080. Accordingly, we find no error in Fitzenrider's calculations and therefore Fitzenrider was entitled to summary judgment. Thus Local 1581's third assignment of error is overruled.

*Local 1581's First Assignment of Error*

{¶44} In Local 1581's first assignment of error, Local 1581 argues generally that the trial court erred in granting summary judgment to Fitzenrider. In Local 1581's brief to this court, under the "Statement of the Assignments of Error", Local 1581 lists this as a separate assignment of error. However, in the "argument" portion of Local 1581's brief, Local 1581 lists assignments of error 2, 3, and 4 as subparts of Local 1581's first assignment of error. Local 1581 does not make a separate argument under this assignment of error, other than to generally say summary judgment was improperly awarded to Fitzenrider. Having found no errors with the trial court's judgment herein, and finding that summary judgment

was properly awarded to Fitzenrider in this case, Local 1581's first assignment of error is overruled.

*Fitzenrider's Assignment of Error*

**{¶45}** In Fitzenrider's sole assignment of error Fitzenrider argues that the trial court erred in failing to award Fitzenrider attorney's fees. Specifically Fitzenrider argues that Local 1581's complaint was unreasonable and without foundation and therefore Fitzenrider was entitled to attorney's fees.

**{¶46}** When a trial court is empowered to award attorneys' fees by statute, the decision to award such fees and the amount of such fees is within the sound discretion of the trial court. *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc*, 23 Ohio App.3d 85, 91 (12th Dist.1985). *See also Bittner v. Tri County Toyota, Inc*, 58 Ohio St.3d 143, 145-146 (1991). That decision will not be overturned absent an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶47}** The statute governing attorney's fees in this case is R.C. 4115.16(D), which reads:

> **(D) Where, pursuant to this section, a court finds a violation of sections 4115.03 to 4115.16 of the Revised Code, the court shall award attorney fees and court costs to the prevailing party. In the event the court finds that no violation has occurred, the**

**court may award court costs and fees to the prevailing party, other than to the director or the public authority, where the court finds the action brought was unreasonable or without foundation, even though not brought in subjective bad faith.**

{¶48} In its opinion, the trial court denied Fitzenrider attorney's fees, holding "[r]egarding [Fitzenrider's] request for attorney fees against [Local 1581 the court] has found that [Local 1581] was in fact an "interested party" and that there was no lack of possible foundation or subjective bad faith on the part of [Local 1581]. Thus, no attorney fees would be awarded [to Fitzenrider]." (Doc. 75).

{¶49} As many of the cases we relied upon in this decision were decided after the inception of this case, and as there were some technical irregularities here, we do not find that the trial court abused its discretion in denying Fitzenrider attorney's fees. Importantly we emphasize that we may not simply substitute our judgment for the trial court's. Finding nothing unconscionable or arbitrary in the trial court's decision, Fitzenrider's assignment of error is overruled.

{¶50} For the foregoing reasons, the assignments of error are overruled and the judgment of the Henry County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**